UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RAFAEL A. AMEZCUA OLVERA, | § | No. 5:20–CV–124–DAE |
| | § | |
| Petitioner, | § | |
| | § | |
| vs. | § | |
| | § | |
| JOSE CORREA, SR., Field Office | § | |
| Director, Immigration and Customs | § | |
| (ICE), Enforcement and Removal | § | |
| Operations (ERO); WARDEN | § | |
| RAYMUNDO CASTRO, South Texas | § | |
| Detention Complex, in his official | § | |
| capacity; and MERRICK GARLAND,[1] | § | |
| in his official capacity as Attorney | § | |
| General of the United States, | § | |
| | § | |
| Respondents. | § | |

ORDER (1) MODIFYING BUT OTHERWISE ADOPTING THE REPORT
RECOMMENDATION ("R&R"); (2) GRANTING PETITIONER'S MOTION
FOR SUMMARY JUDGMENT; (3) DENYING RESPONDENTS' MOTION
FOR SUMMARY JUDGMENT; AND (4) GRANTING HABEAS RELIEF

    Before the Court is a Report and Recommendation ("R&R") filed by

Magistrate Judge Henry J. Bemporad ("Judge Bemporad" or the "Magistrate

---

[1] Pursuant to Fed. R. Civ. P. 25(d), the Court **ORDERS** Attorney General Merrick Garland be substituted as a Defendant for former Attorney General William Barr on the docket of this case.

Judge") on March 29, 2021.  (Dkt. # 53.)  Pretrial matters were referred to Judge Bemporad on February 3, 2020.  (Dkt. # 1.)  Notice of the R&R was sent to the parties on March 30, 2021.  Objections to the Recommendations were due within fourteen (14) days after being served with a copy.  On April 13, 2021, Respondents timely filed Objections to the Magistrate Judge's R&R ("Objections").[2]  (Dkt. # 55.)  Pursuant to Local Rule CV-7(h), the Court finds this matter suitable for disposition without a hearing.

After careful consideration, and for the reasons given below, the Court **MODIFIES** the Magistrate Judge's findings in his R&R as described below, and **ADOPTS** the conclusions contained therein.  (Dkt. # 53.)  Accordingly, as recommended in the R&R, the Court **GRANTS** Petitioner's Motion for Summary Judgment (Dkt. # 35); **DENIES** Respondents' Motion for Summary Judgment (Dkt. # 55); and **GRANTS** Petitioner habeas relief in the form of a constitutionally adequate bond hearing.

The Court must conduct a *de novo* review of any of the Magistrate Judge's conclusions to which a party has specifically objected.  See 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a *de novo* determination of those

---

[2] Petitioner responded to the Objections on April 27, 2021, arguing that Respondents were too late to file the Objections.  (Dkt. # 56.)  But regardless of the date listed on the R&R, Respondents' Objections were filed within fourteen (14) days of the Court providing notice to the parties, and are, therefore, timely.

portions of the report or specified proposed findings or recommendations to which objection is made."). The objections must specifically identify those findings or recommendations that the party wishes to have the district court consider. Thomas v. Arn, 474 U.S. 140, 151 (1985). A district court need not consider "[f]rivolous, conclusive, or general objections." Battle v. U.S. Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987). Findings to which no specific objections are made do not require *de novo* review; instead, the Court need only determine whether the R&R is clearly erroneous or contrary to law. United States v. Wilson, 864 F.2d 1219, 1221 (5th Cir. 1989). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

Respondents object to three conclusions in Judge Bemporad's R&R: (1) that Petitioner was prejudiced by an allegedly improper application of the burden of proof at Petitioner's immigration bond hearing; (2) that due process required Respondents to bear the burden of proof at that hearing; and (3) that such a burden needed to be shown by clear and convincing evidence. (Dkt. # 55 at 3–14.) Regarding prejudice, Respondents contend that Judge Bemporad failed to consider the flight risk effect of Petitioner's INTERPOL Red Notice, that he improperly reweighed evidence related to the enforceability of Petitioner's Mexican arrest warrants, and that he ignored Petitioner's access to significant

3

financial resources. (Id. at 4–8.) In their arguments regarding the allocation of—and appropriate standard for—the burden of proof in Petitioner's bond hearing, Respondents reiterate unpersuasive arguments from their summary judgment motion, as described below. (Id. at 9–14.)

As explained below, after reviewing each of Respondents' specific objections to the R&R findings *de novo*, the undersigned finds no reason to depart from Judge Bemporad's conclusions. Accordingly, the undersigned **MODIFIES** the reasoning supporting the prejudice determination in Judge Bemporad's R&R but otherwise **ADOPTS** the R&R in its entirety. (Dkt. # 53.)

1. <u>Proper Allocation of and Applicable Standard for Burden of Proof</u>

Respondents' prejudice objection is their best argument, which is likely why they present it first. However, in order to explain why the undersigned ultimately rejects that objection, the undersigned finds it critical to first note the magnitude of Immigration Judge Stuart D. Alcorn's ("the IJ") error in assigning the burden of proof at Petitioner's bond hearing. The IJ required *Petitioner* to bear the burden of proof at his bond hearing to demonstrate that he is *not* a flight risk (by an unspecified standard). (Dkt. # 3 at 388–89.) In the R&R, Judge Bemporad thoroughly explained why—given the balance of interests involved—the proper allocation of burden should have been placed on Respondents, and why that burden

needed to be proven by clear and convincing evidence.  (Dkt. # 53 at 7–14.) Respondents' objections to this conclusion are unpersuasive.

First, Respondents cling to the argument that they could not be forced to bear the burden at Petitioner's bond hearing—let alone by a clear and convincing evidence standard—because Congress has authorized categorical detention (i.e., detention without any individualized consideration) for some unauthorized aliens.  See, e.g., 8 U.S.C. § 1226(c)(1) (providing mandatory detention of aliens who have committed certain qualifying offenses).  But Judge Bemporad wisely noted that Petitioner does not belong to one of those categories, and therefore, any argument that those separate provisions affect the proceedings involving Petitioner thwarts Congress's intent to define such categories separately. Compare id., with § 1226(a).

And while Respondents correctly note that there are some situations where detention that is neither "indefinite [n]or potentially permanent" may militate against finding a due process violation, see, e.g., Hernandez-Esquivel v. Castro, Case No. 5:17–564–RBF, 2018 WL 3097029, at *7 (W.D. Tex. June 22, 2018) (case referred from Judge Rodriguez), Judge Bemporad correctly found that the Mathews v. Eldridge factors support finding that due process was violated here. Judge Bemporad also cited several recent cases in which courts outside the Fifth Circuit held that that Respondents must prove their case by clear and convincing

5

evidence in these types of civil detention cases, and Respondents have provided no evidence suggesting that the Fifth Circuit would hold otherwise.  See, e.g., Velasco Lopez v. Decker, 978 F.3d 842, 855–57 (2d Cir. 2020); Santos v. Warden Pike Cty. Corr. Facility, 965 F.3d 203, 214 (3d Cir. 2020); Singh v. Holder, 638 F.3d 1196, 1203–06 (9th Cir. 2011).  Accordingly, the undersigned **ADOPTS** Judge Bemporad's burden of proof determination in its entirety.  (Id.)  The IJ's misallocation of the burden of proof is an error of significant magnitude.

    2. Prejudice Determination

    Petitioner's due process claim also requires proof that he was prejudiced by the violation.  As Respondents note, after the bond denial that led to this case, the IJ subsequently denied Petitioner's request for relief from removal— a decision that is still pending before the BIA.  (Dkt. # 55 at 6–7.)  Given that the IJ's flight risk determination involves consideration of Petitioner's chance of receiving relief from removal, Respondents argue that Petitioner's "position has . . . weakened" since the initial determination—which, they contend, makes it less likely that the IJ will reach a different result in a new hearing.  (Id. at 7.)  First, the undersigned is not sure this point is even relevant, considering the due process prejudice inquiry is retrospective.  Cf. Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985) ("To demonstrate prejudice, the claimant must show 'a reasonable probability' that but for [the due process violation], the result of the proceeding

*would have been* different." (internal citation omitted, emphasis added)).  But even if the Court were to consider the supposed change in Petitioner's position, the undersigned would still conclude that Judge Bemporad reached the correct conclusion because the magnitude of the IJ's error—assigning the burden to Petitioner when it should have been ICE's burden to prove by clear and convincing evidence—still supports a "reasonable probability" of reaching a different outcome, even if that outcome may not be more likely than the alternative.  Id.

Respondents also contend that Judge Bemporad failed to consider Petitioner's "access to tremendous financial resources" and "misstate[d] the relevance of [Petitioner's Mexican] arrest warrants."  (Dkt. # 55 at 5–8.)  The undersigned disagrees with Respondents.  In an earlier section of the R&R, Judge Bemporad stated that Petitioner "owned several businesses and a bank," and specifically noted "his son's ability to provide for him financially."  (Dkt. # 53 at 2–3.)  His prejudice analysis did not overlook this factor.  Additionally, the IJ found that Petitioner's arrest warrants from the Mexican government and INTERPOL Red Notice provided a basis for restricting Petitioner to deferral of removal relief, which the IJ also noted involves an "extremely high burden of proof" that he doubted Petitioner could meet.  (Dkt. # 3 at 389.)  Accordingly, Judge Bemporad did not err in concluding that "[t]he [IJ] found that the arrest warrants alone would be insufficient to preclude Petitioner from meeting his

7

burden to show that he was not a flight risk." (Dkt. # 53 at 15.) To the extent any other factors were relevant to that determination from the IJ, Judge Bemporad's analysis is still correct. "It is reasonably probable that [a proper allocation of—and standard for—the burden of proof] could have resulted in a different outcome." (Id.)

Finally, Judge Bemporad certainly did not overlook the INTERPOL Red Notice—he mentioned it on page 3 of the R&R. (Dkt. # 53 at 3.) Respondents cite one unpublished decision from the Northern District of California holding that such a notice could provide a basis for an IJ determining that a petitioner posed a flight risk. Torres Murillo v. Barr, Case No. 19-cv-5676-SK, 2019 WL 8723753, at *5 (N.D. Cal. Oct. 23, 2019). But regarding the broader due process implications beyond the petitioner in that case, the court reached a narrower holding: "It does not violate due process to give a[n INTERPOL Red Notice] *some weight* in determining flight risk[.]" Id. (finding the INTERPOL Red Notice sufficient to justify the IJ's decision in that case). Respondents' objections to Judge Bemporad's R&R pale in comparison to the magnitude of the IJ's error—which suggests that the result may have been different in a proper proceeding.

The undersigned concludes that the magnitude of the IJ's error in assigning the burden of proof is critical to the prejudice analysis in this case. Judge Bemporad noted this fact while cogently distinguishing this case from Maldonado-Velasquez v. Moniz, 274 F. Supp. 3d 11, 15 (D. Mass. 2017) ("Maldonado-Velasquez did receive a hearing and under ***any conceivable allocation of the burden of proof*** that hearing demonstrated his ineligibility for release.") (emphasis added).  (Dkt. # 53 at 15.)  Except in such lopsided cases, the magnitude of the error matters because Petitioner's ability to show he had a "reasonable probability" that the IJ would have made a different determination in a constitutionally adequate hearing, see Alexander, 775 F.2d at 602, surely depends on how far away from "constitutionally adequate" the first hearing was.

Nevertheless, for similar reasons the undersigned finds that Respondents identified one error in Judge Bemporad's analysis—that the IJ's "high" flight risk assessment of Petitioner "has little relevance to the issue of prejudice, as that finding was made without the [G]overnment having to bear any burden on the issue."  (Dkt. # 53 at 14; Dkt. # 55 at 6 n.2.)  The IJ's determination that Petitioner was not particularly close to meeting his misallocated burden is also a significant factor in considering whether there is a reasonable probability that a different outcome would have resulted from a constitutionally adequate proceeding.  In light of the magnitude of the IJ's mistake in allocating the

9

burden—which involved more than merely shifting the result when the evidence is in equipoise—it is far from clear that the IJ would have concluded that ICE proved Petitioner to be a high enough flight risk for civil detention by clear and convincing evidence.

Therefore, to the extent Judge Bemporad did not explicitly consider the magnitude of flight risk stated in the IJ's finding or the magnitude of the IJ's constitutional mistake, the undersigned **MODIFIES** the R&R to incorporate the undersigned's consideration of both.  (Dkt. # 53.)  For reasons stated above, the undersigned reaches the same conclusion and otherwise **ADOPTS** the R&R in its entirety.  (Id.)

    3.  Conclusion

Therefore, except as **MODIFIED** in the manner described above, the undersigned **ADOPTS** Judge Bemporad's Report and Recommendation in its entirety, including its conclusions.  (Dkt. # 53.)  Accordingly, it is hereby **ORDERED** that:

1. Petitioner's Motion for Summary Judgment (Dkt. # 35) is **GRANTED**;

2. Respondents' Motion for Summary Judgment (Dkt. # 48) is **DENIED**;

3.      Petitioner's Petition for Habeas Corpus (Dkt. # 3) is **GRANTED IN PART AND DENIED IN PART**; regarding his request for the Court to order Respondents to release him, it is **DENIED**—subject to the conditions described below; regarding his request for a constitutionally adequate hearing, it is **GRANTED**;

4.      **Within fourteen (14) days** of the date of this Order, Respondents shall take Petitioner before an immigration judge for a new individualized bond hearing;

5.      At that hearing, Respondents shall bear the burden of demonstrating, by clear and convincing evidence, that Petitioner is a danger to the community or a flight risk;

6.      The Immigration Judge conducting the hearing must explain all specific findings and conclusions on the record;

7.      In the event Respondents fail to provide Petitioner with such a bond hearing within the timeframe set forth above, Respondents must immediately release Petitioner.

This order constitutes **final judgment** in this case. The Clerk of the Court is **INSTRUCTED** to **CLOSE** this case.

    **IT IS SO ORDERED**.

    **DATED**: San Antonio, Texas, May 11, 2021.

David Alan Ezra
Senior United States District Judge